O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE DOBBINS SMITH, | Case No. ED CV 13-1306-SP |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

**I.**

**<u>INTRODUCTION</u>**

On August 1, 2013, plaintiff Jacqueline Dobbins Smith filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one overarching issue for decision: whether the Administrative Law Judge ("ALJ") erred at step two by failing to find plaintiff suffered from a severe mental impairment due to his failure to properly consider the opinions of a treating physician and two examining physicians. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 4-14; Memorandum in Support Defendant's Answer ("D. Mem.") at 3-11.

Having carefully studied, inter alia, the parties' moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ erred at step two when he improperly rejected the opinions of plaintiff's treating physician and examining physicians without providing specific and legitimate reasons supported by substantial evidence for doing so. Therefore, the court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was forty-six years old on her alleged disability onset date, has a high school education and completed one year of college. AR at 31, 180. Her past relevant work was as a fast food manager, sales clerk, and fast food worker. *Id.* at 66-67.

On February 25 and 28, 2010, plaintiff filed applications for a period of disability, DIB, and SSI due to lung and respiratory injury, psychological problems, hip injury, neck injury, stomach issues, chemical asthma, shortness of breath, and panic attacks. *Id*. at 10, 180, 184. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 80-85, 92-96, 98.

On June 13, 2011, plaintiff, represented by counsel, appeared and testified

at a hearing before the ALJ. *Id.* at 26-51. On October 17, 2011, plaintiff testified at a supplemental hearing. *Id.* at 52-73. The ALJ also heard testimony from Alan Boroskin, a vocational expert. *Id.* at 66-72. On December 16, 2011, the ALJ denied plaintiff's claim for benefits. *Id.* at 10-20.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since February 16, 2008, the alleged onset date. *Id.* at 12.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: reactive airway disease syndrome and asthma status-post acute smoke inhalation; osteoporosis; and obesity. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 17.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that plaintiff had the RFC to: lift/carry twenty pounds occasionally and ten pounds frequently; sit/stand/walk for six hours in an eight-hour day; occasionally use a cane for uneven services; and occasionally climb, balance, stoop, kneel, crouch, and crawl. *Id.* at 17-18. The ALJ prohibited plaintiff from: climbing ladders, ropes, or scaffolds; working at extreme temperatures; and working where there is an excessive amount of dust, fumes, and gases. *Id.* at 18.

The ALJ found, at step four, that plaintiff was capable of performing her

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

past relevant work as a fast food manager, fast food worker, and sales clerk. *Id.* at 19-20. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 20.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

**A.   The ALJ Failed to Properly Consider the Opinions of Plaintiff's Treating Physician and Examining Physicians**

Plaintiff contends that the ALJ improperly rejected the opinions of her treating physician, Dr. Esther Chodakiewitz, and examining physicians, Dr. Perry Maloff and Dr. Theresa Darrington. P. Mem. at 5-14. Specifically, petitioner argues that the reasons the ALJ provided for rejecting their opinions were not specific and legitimate and supported by substantial evidence. *Id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians.[2] 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2); 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating

---

[2] Psychologists are considered acceptable medical sources whose opinions are accorded the same weight as physicians. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Accordingly, for ease of reference, the court will refer to Dr. Darrington as a physician.

5

physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1. **Medical History**
#### **Dr. Esther Chodakiewitz**

Dr. Chodakiewitz, a psychiatrist, treated plaintiff from March 5, 2008 through at least April 21, 2010. *See* AR at 553, 681. Dr. Chodakiewitz began treating plaintiff after she reported mental health problems as a result of a fire at her workplace.[3] *See id.* at 681. After the initial March 5, 2008 evaluation, Dr. Chodakiewitz diagnosed plaintiff with, inter alia, post-traumatic stress disorder ("PTSD") and "occupational problems," and assessed a global assessment of

---

[3] On February 16, 2008, plaintiff was working as a shift supervisor at a McDonald's restaurant. AR at 416, 682-83. When an electrical fire began in the kitchen, plaintiff attempted to put out the fire with an extinguisher and helped to evacuate customers. *See id.* at 416, 683. As a result of the fire and her actions, plaintiff suffered from smoke inhalation. *See id.* at 417, 683.

6

functioning ("GAF") score of 25 ("March 2008 Opinion").[4] *See id.* at 681-91. At her treatment sessions, Dr. Chodakiewitz consistently observed that plaintiff was cooperative, but irritable and anxious. *See, e.g., id.* at 554, 562, 613, 661, 670. Dr. Chodakiewitz diagnosed plaintiff with post traumatic stress disorder ("PTSD") and treated her with therapy and Paxil. *See, e.g., id*. at 698.

On July 14, 2009, Dr. Chodakiewitz issued a Permanent and Stationary Report ("July 2009 Opinion"). *Id.* at 576-604. In the July 2009 Opinion, Dr. Chodakiewitz noted that she placed several requests for plaintiff to receive psychotherapy from Dr. Darrington, but that those were rejected. *Id.* at 578-81. Dr. Chodakiewitz noted that plaintiff reported frustrations concerning Dr. Maloff and felt that he was not helping her. *Id.* at 581-84. Plaintiff also reported that Dr. Maloff wanted her to discontinue Paxil and start other medications, which she did not want to do. *Id*. at 584, 591.

Based on her treatment of plaintiff, plaintiff's treatment records, and Dr. Darrington's evaluation, Dr. Chodakiewitz opined that plaintiff suffers from PTSD, occupational problems, and had a GAF score of 50 at the time.[5] *Id.* at 589. Dr. Chodakiewitz opined that plaintiff suffers from the following impairments: slight impairment in her ability to comprehend and follow instructions and perform simple repetitive tasks; slight to moderate impairment in her ability to maintain a work pace appropriate to a given work load; moderate impairment in

---

[4] A GAF score of 21-30 indicates that "[b]ehavior is considered influenced by delusions or hallucinations *or* serious impairment, in communication or judgment [] *or* inability to function in almost all areas []." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th Ed. 2000) ("DSM") (emphasis in original).

[5] A GAF score in the 41-50 range indicates "[s]erious symptoms [] *or* any serious impairment in social, occupational, or school functioning []." DSM (emphasis in original).

her ability to perform complex or varied tasks, relate to other people beyond giving and receiving instructions, influence others, perform activities of daily living; and a moderate to severe impairment in her ability to make generalizations, evaluations or decisions without supervision and to accept and carry out responsibilities for directions, controls, and planning. *Id.* at 596, 598. Dr. Chodakiewitz disagreed with Dr. Maloff over the best course of treatment for plaintiff, particularly over the use of benzodiazepines. *See, e.g.*, *id*. at 572, 584-85.

### Dr. Perry Maloff

Dr. Maloff and a colleague examined plaintiff on five occasions. *Id.* at 323-427. A therapist at Dr. Maloff's office also treated plaintiff an unspecified number of times. *See id.* at 332.

On August 15, 2008, Dr. Raymond J. Coffin, a psychologist at Dr. Maloff's practice, examined plaintiff. *Id.* at 416-27. Dr. Coffin conducted psychological tests and diagnosed plaintiff with, inter alia, PTSD and major depression, and assessed a GAF score of 50. *See id.* Dr. Coffin opined that many of plaintiff's results were difficult to interpret due to, inter alia, an unusually high number of elevated symptoms. *See id.* at 422, 425. Dr. Coffin noted that plaintiff's results suggested that she was "experiencing an extremely high level of psychological distress," she may have been over-reporting her symptoms, and her "pattern of diffuse responding is typical of patients who tend to both exaggerate their somatic distress and unrealistically disclaim psychological discomfort." *Id*. at 422-23.

On September 4, 2008, Dr. Maloff issued an evaluation after examining plaintiff on two occasions. *Id.* at 369-415. Dr. Maloff observed that plaintiff was alert, cooperative, depressed, and anxious, and diagnosed her with PTSD and

several moderate to severe psychosocial stressors.[6]  *Id.* at 406-07.  Dr. Maloff reviewed plaintiff's medical history and specifically reported his disagreements with Dr. Chodakiewitz's March 2008 Opinion and Dr. Darrington's opinion.  Dr. Maloff felt that Dr. Chodakiewitz missed many of the difficulties plaintiff was experiencing such as her reactions to odors and that a behavioral approach in desensitizing plaintiff was necessary.  *Id.* at 397.  Dr. Maloff criticized Dr. Chodakiewitz's diagnosis of "occupational problems" because Dr. Chodakiewitz failed to quantify or provide descriptions of plaintiff's stressors.  *Id.*  Dr. Maloff was also critical of Dr. Darrington's opinion on the ground that it was confusing and inconsistent.  *Id.* at 399.  Dr. Maloff noted that Dr. Darrington found that there was a high probability that plaintiff was malingering but then she also noted that plaintiff was likely feeling extremely vulnerable and defenseless.  *Id.*  But Dr. Maloff agreed with Dr. Darrington's opinion that systematic desensitization should be part of plaintiff's treatment plan.  *Id.* at 400.

On March 25, 2009, Dr. Maloff examined plaintiff and issued another opinion.  *Id*. at 355-68.  Dr. Maloff issued the same diagnosis and a GAF score of 30.  *Id*. at 358-59.  Dr. Maloff opined that plaintiff's condition had deteriorated but that plaintiff was highly motivated to get better.  *Id.* at 364.  Dr. Maloff disagreed with Dr. Chodakiewitz's treatment plan and recommended that plaintiff participate in behavorial desensitization programs and be prescribed anti-anxiety medication.  *Id*. at 360-61, 364-65.  Dr. Maloff reported that plaintiff asked him to help her find a new psychiatrist.  *Id*. at 365.

---

[6]  Dr. Maloff opined that plaintiff has the following moderate to severe psychosocial stressors:  traumatic experience associated with the fire at work; an inability to return to gainful employment; reduced capacity to leave her home secondary to panic attacks and agoraphobia, triggered by associations between everyday odors and smoke; resentment toward employer; and alleged indifference demonstrated by employer.  AR at 359.

Dr. Maloff examined plaintiff on July 21 and September 11, 2009, and issued an evaluation dated September 11, 2009.[7] *Id.* at 323-54. During the examination, Dr. Maloff observed that plaintiff was alert and oriented, but upset, frustrated, had pressured speech, and was tearful. *Id.* at 348. Dr. Maloff's diagnosis remained the same. *Id.* at 349. Dr. Maloff reviewed and specifically commented on several of plaintiff's medical records. Dr. Maloff: claimed to have never expressed to plaintiff that Dr. Chodakiewitz was committing malpractice as her notes allege; noted that plaintiff reported to Dr. Rhee, an emergency room physician, that Paxil did not help her; and noted that Dr. Fortamasce, who performed a brochoscopy on plaintiff, opined that plaintiff should be further evaluated to determine whether she was malingering or had a hysterical conversion and anxiety disorder, of which the latter was consistent with Dr. Maloff's opinion. *See id.* at 337-38, 341-42; *see also id.* at 315. Dr. Maloff concluded that plaintiff's condition was deteriorating, and once again disagreed with Dr. Chodakiewitz's treatment plan. *Id.* at 349-51

### **Dr. Theresa Darrington**

Dr. Darrington examined plaintiff on March 24, 2008. *Id.* at 671-79. Dr. Darrington also reviewed plaintiff's medical records and a preliminary draft of Dr. Chodakiewitz's report. *Id.* at 672-73. Dr. Darrington observed that plaintiff was cooperative, tearful, fairly reliable, and appeared to fatigue easily. *Id.* at 674. During the psychological tests, plaintiff was "not motivated in attempting tasks presented to her," spent a below average amount of time on items, and responded without looking at items carefully. *Id.* at 674-75. Plaintiff also frequently failed to correct her errors when she recognized them and did not comprehend all the

---

[7] Dr. Maloff reported that on June 22, 2009 plaintiff's case manager requested that he become plaintiff's treating physician. AR at 330. Dr. Maloff saw plaintiff on July 21, 2009 in that capacity but was subsequently asked to continue on as a qualified medical examiner. *Id.*

10

instructions. *Id.* at 675. Dr. Darrington noted that plaintiff responded to the MMPI-2 test in "an extremely exaggerated manner" and her "scores may have been the result of confusion, disorganization, illiteracy, faking mental illness or a cry for help." *Id.* at 676. Plaintiff's MCMI-III disclosure score was unusually high and "may represent an anxious plea for help as a consequence of her inability to cope with current life stresses," but the results were invalid. *Id.* at 676-77. Plaintiff's MPS T-scores indicate that plaintiff had a 99.9% likelihood of malingering. *Id.* at 677.

      Based on her examination and test results, Dr. Darrington opined that there was a very high probability that plaintiff was malingering, but did not diagnose plaintiff with malingering because there were no external incentives such as the avoidance of work. *Id.* at 677-79. Instead, Dr. Darrington opined that her exaggeration of symptoms was "most likely due to an anxious plea for help as a consequence of her inability to cope with her current life stresses" and that her "psychological symptoms of PTSD [were] so overwhelming that she [] exaggerated her symptoms in a desperate plea for help." *Id*. at 677, 679. Dr. Darrington also opined that plaintiff was likely feeling extremely vulnerable and defenseless, had difficulties in concentration, had symptoms of high anxiety and low energy, was likely going to have difficultly keeping up with her peers, and was unlikely to be able to function in an employment setting. *Id*. at 677-78. Dr. Darrington found that a diagnosis of PTSD was congruent with the testing and plaintiff's self-report, and opined that psychotherapy and systematic desensitization would be beneficial. *Id*. at 678-79. Dr. Darrington stated that if plaintiff's symptoms did not improve with treatment, then she would reconsider a malingering diagnosis. *Id.* at 679.

      **Dr. Katrine Enrile**

      Dr. Enrile, a consultative psychiatrist, examined plaintiff on June 6, 2010.

*Id.* at 711-15.  Dr. Enrile did not review any medical records other than a record dated September 11, 2009.  *Id.* at 712.  Dr. Enrile observed that plaintiff was anxious, cooperative, tearful, and had a linear thought process.  *Id.* at 713.  Dr. Enrile diagnosed plaintiff with PTSD and panic disorder, and assessed a GAF score of 50.  *Id.* at 714.  Dr. Enrile opined that plaintiff would have somewhat impaired day-to-day functioning, her ability to focus would be mildly limited, she could perform detailed tasks with prompting, she could follow instructions, and she could adequately interact with coworkers and public.  *Id.*

### **Dr. Dan Funkenstein**

Dr. Funkenstein, a State Agency physician, reviewed plaintiff's medical records.  *See id*. at 730-31.  Based on his review, he opined that plaintiff suffered from PTSD and anxiety, and she had moderate limitations with regard to: activities of daily living; maintaining social functioning; maintaining concentration, persistence, or pace; understanding, remembering, and carrying out detailed instructions; performing activities within a schedule; maintaining regular attendance; sustaining an ordinary route without special supervision; making simple work-related decisions; completing a normal workday and week; interacting appropriately with the general public; responding appropriately to changes; and setting realistic goals.  *Id.* at 720, 724, 727-28.  Dr. Funkenstein opined that plaintiff was capable of simple, repetitive tasks in a non-public setting, and her allegations were credible.  *Id.* at 726, 729.

### **2.     The ALJ's Findings**

The ALJ concluded that plaintiff did not have a severe mental impairment.  *Id*. at 12.  In reaching that determination, the ALJ gave some weight to the opinion of Dr. Enrile and little weight to the opinions of Dr. Chodakiewitz, Dr. Maloff, Dr. Darrington, and Dr. Funkenstein.  *Id.* at 16-17.  The ALJ gave little weight to the opinions of Dr. Chodakiewitz, Dr. Maloff, and Dr. Darrington because they failed to adequately consider malingering and were inconsistent with plaintiff's daily

activities. *Id.* at 16-17.  The ALJ gave Dr. Funkenstein's opinion little weight because it too was inconsistent with plaintiff's daily activities. *Id.* at 17.  The ALJ's reasons for rejecting the opinions of Dr. Chodakiewitz, Dr. Maloff, and Dr. Darrington were not specific and legitimate and supported by substantial evidence.[8]

The first reason the ALJ gave for rejecting the opinions of Dr. Chodakiewitz, Dr. Maloff, and Dr. Darrington was that they failed to adequately consider malingering. *Id.* at 16.  An ALJ may reject a physician's opinion if that opinion is based on the subjective testimony and reporting of a claimant whose credibility the ALJ discounted.  *See Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) (diagnosis based on the self-reporting of an unreliable person may be discounted).

Here, contrary to the ALJ's contentions, Dr. Chodakiewitz, Dr. Maloff, and Dr. Darrington were all presented with the question of malingering and determined that plaintiff is not a malingerer, although she likely exaggerated her symptoms. The basis of the ALJ's determination that plaintiff is malingering was the fact that several of her physicians – including those three physicians – mentioned that it was a possibility.  AR at 13-15.  This in itself reflects that the physicians considered the possibility of malingering.  Taking the physician's opinions out of context, it would appear that plaintiff is a malingerer.  But here, it is important to note that while the physicians discussed the possibility of malingering, none opined that plaintiff is a malingerer.  Instead, all ultimately opined that plaintiff suffers from PTSD and has limitations resulting from it.

First, despite tests that reflected that she is a likely malingerer, Dr. Darrington did not diagnose plaintiff as a malingerer because plaintiff did not

---

[8] Plaintiff does not argue that the ALJ improperly rejected the opinion of Dr. Funkenstein.

13

appear to have any motive for malingering, including the avoidance of work. *Id.* at 678-79. Instead Dr. Darrington considered plaintiff's symptoms and the various possible explanations for the test results, and concluded that plaintiff's exaggeration was most likely a plea for help to alleviate the actual overwhelming symptoms she was experiencing. *Id*. at 677, 679. In other words, plaintiff was not making up her mental impairment but exaggerating her symptoms to get help for them.[9] This opinion was consistent with Dr. Maloff's. *See id.* at 341-42.

Similarly, contrary to the ALJ's assertion, Dr. Chodakiewitz did not opine that plaintiff is a malingerer. Although Dr. Chodakiewitz concluded that plaintiff was not reliable or capable of reporting her situation adequately, that opinion did not mean that she thought plaintiff was lying, particularly when read in conjunction with her later statement that plaintiff "has been highly motivated to get better," a comment that is incongruent to a finding of malingering. *Id*. at 588-89. There are a number of potential causes for why a claimant may be an unreliable historian, including mental limitations. Indeed, in discussing Dr. Darrington's evaluation, Dr. Chodakiewitz emphasized Dr. Darrington's conclusion that plaintiff's exaggerations were a cry for help for her actual symptoms. *See id.* at 591.

Finally, the ALJ noted Dr. Geoffrey Smith's comments about plaintiff's possible malingering. *See id.* at 15. Dr. Smith, an examining otolaryngologist, found that plaintiff's allergy symptoms did not make physiologic sense and could not have resulted from the smoke inhalation. *Id.* at 871. Dr. Smith also noted that

---

[9] Dr. Darrington reported that she would reconsider a malingering diagnosis if plaintiff did not improve with treatment. AR at 679. But plaintiff did not receive the desensitization treatment or psychotherapy recommended by Dr. Darrington. Although Dr. Chodakiewitz treated plaintiff with medication, Dr. Chodakiewitz did not provide psychotherapy as evidenced by the short length of each of plaintiff's visits and Dr. Chodakiewitz's continued request for psychological treatment for plaintiff. *See id.* at 329, 580, 603.

plaintiff's alleged problem with throwing up could not be reconciled with her weight gain. *Id.* With regard to the allergy symptoms, such finding is consistent with Dr. Maloff's opinion about plaintiff's anxiety.[10] As for the weight gain, Dr. Smith does not appear to have reviewed plaintiff's medical records, which indicate that her weight gain may have been a side effect of her medication. *See id.* at 329, 351.

In short, Dr. Chodakiewitz, Dr. Maloff, and Dr. Darrington, whether in their discussion of psychological tests or others' opinions, all considered the possibility of malingering, and all interpreted the results and exaggerations as a cry for help to alleviate plaintiff's actual symptoms and not as actual malingering. As such, Dr. Chodakiewitz, Dr. Maloff, and Dr. Darrington all diagnosed plaintiff with PTSD and opined that she had moderate to severe limitations which would affect her ability to work. Notably, although Dr. Chodakiewitz and Dr. Maloff vehemently disagreed as to the best course of treatment and each other's competency, they were in general agreement as to plaintiff's mental problems. *See id.* at 364, 589. Thus, the evidence shows that while there may be concern of possible exaggeration, the treating and examining physicians properly and adequately considered the possibility of malingering, and none doubted that plaintiff indeed suffers from PTSD and has more than mild limitations.

The second reason the ALJ provided for rejecting these physicians' opinions – that the opined limitations are inconsistent with plaintiff's daily activities – is similarly not supported by substantial evidence. The ALJ noted that plaintiff could, inter alia, perform some household chores, care for her cat, prepare meals and do some baking, read, watch television, use a computer, go to medical appointments, travel to Tennessee, and attend church. *Id.* at 16. "[T]he mere fact

---

[10] It is also consistent with the opinion of Dr. Leung, plaintiff's treating pulmonologist, and Dr. Fortamsce that plaintiff may have a trigger sensitivity or hysterical conversion and anxiety disorder. *See* AR at 341-32, 405.

15

a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant does not need to be "utterly capacitated." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But if a claimant is "able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting, a specific finding as to this fact may be sufficient to discredit" her. *Id.* (emphasis in original).

Here, plaintiff's daily activities are not inconsistent with the physicians' limitations. Dr. Chodakiewitz opined that plaintiff has moderate impairments with regard to activities of daily living, but has more severe impairments with regard to work functions, such as her ability to make generalizations, evaluations, or decisions without supervision, and to accept and carry out responsibilities for directions, controls, and planning. *Id.* at 596, 598. Dr. Maloff opined that plaintiff has moderate to severe psychosocial stressors, most of which were work-related and not necessarily related to activities of daily living. Finally, Dr. Darrington also opined employment related limitations such as difficulties in concentration, low energy, and difficultly keeping up with her peers. *Id.* at 677-78. Other than Dr. Chodakiewitz, plaintiff's physicians opined impairments primarily related to work. And even assuming that plaintiff only has mild limitations with regard to activities of daily living as the ALJ found, such mild limitations would not be incompatible with the work-related limitations the physicians opined and do not undermine their opinions.

Accordingly, the ALJ failed to cite specific and legitimate reasons supported by substantial evidence to reject the opinions of Dr. Chodakiewitz, Dr. Maloff, and Dr. Darrington.

**B.     The ALJ Erred at Step Two**

Plaintiff argues that the ALJ failed to properly determine that plaintiff has a

severe mental impairment. P. Mem. at 5, 13-14. At step two, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920 (a)(4)(ii). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290.

As discussed above, the ALJ improperly rejected the opinions of Dr. Chodakiewitz, Dr. Maloff, and Dr. Darrington, all of whom opined that plaintiff had mild to severe non-exertional limitations due to PTSD. Consequently, the ALJ's step two determination is not supported by substantial evidence.

In many instances, error at step two is harmless where, as here, the ALJ found the claimant suffered from other severe impairments. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error by ALJ at step two was harmless because the step was resolved in plaintiff's favor). But the ALJ's error here was not harmless, as in assessing plaintiff's RFC the ALJ found no mental limitations, and it is apparent that he gave no consideration to plaintiff's mental impairments. *See* Social Security Ruling 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" ). This makes sense given the ALJ's rejection of the opinions of Dr. Chodakiewitz, Dr. Maloff, and Dr. Darrington, but as discussed, that rejection was in error.

Accordingly, the ALJ erred at step two in rejecting the opinions of Dr. Chodakiewitz, Dr. Maloff, and Dr. Darrington and consequently finding plaintiff did not suffer from a severe mental impairment, and such error was not harmless.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate

17

to exercise this discretion to direct an immediate award of benefits.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility).  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred in failing to properly evaluate the opinions of Dr. Chodakiewitz, Dr. Maloff, and Dr. Darrington.  On remand, the ALJ shall reconsider the opinions provided by Dr. Chodakiewitz, Dr. Maloff, and Dr. Darrington and either credit their opinions or provide specific and legitimate reasons supported by substantial evidence for rejecting them.  The ALJ shall then proceed through steps two, three, four, and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: July 14, 2014

SHERI PYM
United States Magistrate Judge